IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

**MANUEL GREG AGUILAR,**

   **Plaintiff,**

**v.**                                                                                                                              **No. 15-cv-0896 SMV**

**NANCY A. BERRYHILL,**[1]
**Acting Commissioner of Social Security Administration,**

   **Defendant.**

## MEMORANDUM OPINION AND ORDER

THIS MATTER is before the Court on Plaintiff's Motion to Reverse and Remand for a Rehearing with Supporting Memorandum [Doc. 16] ("Motion"), filed on June 21, 2016. The Commissioner responded on September 15, 2016. [Doc. 24]. Plaintiff replied on September 29, 2016. [Doc. 28]. The parties have consented to the undersigned's entering final judgment in this case. [Doc. 7]. Having meticulously reviewed the entire record and being fully advised in the premises, the Court finds that Plaintiff fails to meet his burden as the movant to show that the Administrative Law Judge's ("ALJ") decision did not apply the correct legal standards or was not supported by substantial evidence. Accordingly, the Motion will be denied and the Commissioner's final decision affirmed.

## Standard of Review

The standard of review in a Social Security appeal is whether the Commissioner's final decision[2] is supported by substantial evidence and whether the correct legal standards were

---

[1] Nancy A. Berryhill is now the Acting Commissioner of Social Security. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Nancy A. Berryhill should be substituted for Acting Commissioner Carolyn W. Colvin as the defendant in this suit. No further action needs to be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

applied. *Maes v. Astrue*, 522 F.3d 1093, 1096 (10th Cir. 2008). If substantial evidence supports the Commissioner's findings and the correct legal standards were applied, the Commissioner's decision stands and the plaintiff is not entitled to relief. *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004). Courts must meticulously review the entire record, but may neither reweigh the evidence nor substitute their judgment for that of the Commissioner. *Flaherty v. Astrue*, 515 F.3d 1067, 1070 (10th Cir. 2007).

"Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Langley*, 373 F.3d at 1118. The decision "is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it." *Id.* While a court may not re-weigh the evidence or try the issues de novo, its examination of the record as a whole must include "anything that may undercut or detract from the [Commissioner]'s findings in order to determine if the substantiality test has been met." *Grogan v. Barnhart*, 399 F.3d 1257, 1262 (10th Cir. 2005). "The possibility of drawing two inconsistent conclusions from the evidence does not prevent [the] findings from being supported by substantial evidence." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (citing *Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004)).

"The failure to apply the correct legal standard or to provide this court with a sufficient basis to determine that appropriate legal principles have been followed is grounds for reversal." *Jensen v. Barnhart*, 436 F.3d 1163, 1165 (10th Cir. 2005) (internal quotation marks omitted).

---

[2] A court's review is limited to the Commissioner's final decision, 42 U.S.C. § 405(g), which generally is the ALJ's decision, 20 C.F.R. §§ 404.981, 416.1481. This case fits the general framework, and therefore, the Court reviews the ALJ's decision as the Commissioner's final decision.

**Applicable Law and Sequential Evaluation Process**

In order to qualify for disability benefits, a claimant must establish that he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505(a), 416.905(a).

When considering a disability application, the Commissioner is required to use a five-step sequential evaluation process. 20 C.F.R. §§ 404.1520, 416.920; *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). At the first four steps of the evaluation process, the claimant must show: (1) he is not engaged in "substantial gainful activity"; *and* (2) he has a "severe medically determinable . . . impairment . . . or a combination of impairments" that has lasted or is expected to last for at least one year; *and* (3) his impairment(s) either meet or equal one of the "Listings"[3] of presumptively disabling impairments; *or* (4) he is unable to perform his "past relevant work." 20 C.F.R. §§ 404.1520(a)(4)(i–iv), 416.920(a)(4)(i–iv); *Grogan*, 399 F.3d at 1261. If he cannot show that his impairment meets or equals a Listing, but he proves that he is unable to perform his "past relevant work," the burden of proof then shifts to the Commissioner, at step five, to show that the claimant is able to perform other work in the national economy, considering his residual functional capacity ("RFC"), age, education, and work experience. *Grogan*, 399 F.3d at 1261.

---

[3] 20 C.F.R. pt. 404, subpt. P, app. 1.

**Procedural Background**

Plaintiff applied for a period of disability, disability insurance benefits, and supplemental security income on May 20, 2011. Tr. 20. He alleged a disability-onset date of March 8, 2011. *Id.* His claims were denied initially and on reconsideration. *Id.* Plaintiff requested a hearing before an ALJ. *Id.* ALJ J. Frederick Gatzke held a hearing on January 8, 2014. *Id.*, Tr. 35–72. Plaintiff appeared with his non-attorney representative. Tr. 20, 37. The ALJ heard testimony from Plaintiff and an impartial vocational expert ("VE"), Judith Beard. Tr. 20, 38–71.

The ALJ issued his unfavorable decision on March 3, 2014. Tr. 30. He found that Plaintiff met the insured status requirements through December 21, 2013. Tr. 22. At step one, he found that Plaintiff had not engaged in substantial gainful activity since the onset date of his alleged disability. *Id.* Because Plaintiff had not engaged in substantial gainful activity for at least 12 months, the ALJ proceeded to step two. *Id.* There, he found that Plaintiff suffered from severe posttraumatic stress disorder ("PTSD"), major depression, and anxiety. *Id.* He further found that Plaintiff's chronic pain disorder, migraine headaches, and sleep apnea were not severe. Tr. 22–23.

At step three, the ALJ determined that none of Plaintiff's impairments, alone or in combination, met or medically equaled a Listing. Tr. 23–24. Because none of Plaintiff's impairments met or medically equaled a Listing, the ALJ went on to assess Plaintiff's RFC. Tr. 24–28. The ALJ found that:

> [Plaintiff] has the [RFC] to perform light work as defined in 20 [C.F.R. §§] 404.1567(b) and 416.967(b) with the following limitations: he can tolerate on[ly] limited exposure to dust, fumes, and volatile chemicals; he should avoid supervisory roles and can

4

> tolerate only incidental contact with the public; he should also not be required to settle disputes on the employer's behalf; and [Plaintiff] should not work with minors.

Tr. 24. At step four, the ALJ found that Plaintiff was unable to perform any of his past relevant work as a teacher and school administrator or maintenance worker. Tr. 28. At step five, the ALJ found that, based on Plaintiff's RFC, age (42 at the alleged onset date), education (college graduate), and work experience and the testimony of the VE, Plaintiff could perform work that exists in significant numbers in the national economy. Tr. 28–29. Ultimately, the ALJ found that Plaintiff had not been under a disability, as defined by the Act, during the relevant time period, and he denied the claims. Tr. 29.

After the ALJ denied the claims, Plaintiff hired an attorney and asked the Appeals Council for review. Tr. 13. However, the Appeals Council denied Plaintiff's request for review on August 12, 2015. Tr. 1−3. Plaintiff timely filed the instant action on October 6, 2015. [Doc. 1].

## **Analysis**

Plaintiff fails to show any reversible error in the ALJ's evaluation of his or his wife's credibility. Similarly, there is no error in the ALJ's failure to perform a function-by-function analysis of his mental abilities because the ALJ clearly addressed such abilities and the Court can follow the ALJ's reasoning. There is no error with respect to Dr. Reich's report because it is not inconsistent with the RFC. Finally, Plaintiff fails to show that the ALJ was required to order a consultative psychological examination. Remand is not warranted.

Credibility

Social Security Ruling ("SSR") 96-7p requires ALJs to "make a *finding* about the credibility of the individual's statements about the symptom(s) and its functional effects. . . . It is not sufficient for the adjudicator to make a single, conclusory statement that 'the individual's allegations have been considered' or that 'the allegations are (or are not) credible.'" 1996 SSR LEXIS 4, at *2–3 (emphasis added).[4] Specifically, in evaluating the credibility of a claimant's subjective complaints, the ALJ follows the steps outlined in *Luna v. Bowen*, 834 F.2d 161, 163 (10th Cir. 1987). First, accepting the subjective allegations as true, the ALJ must determine whether the claimant has a medically determinable impairment that "could reasonably be expected to produce the alleged [symptoms]." *Luna*, 834 F.2d at 163; *see* SSR 96-7p, 1996 WL 374186, at *2. "If an appropriate nexus does exist," the ALJ must next consider all of the relevant evidence "to determine whether the claimant's [symptoms are] in fact disabling." *Luna*, 834 F.2d at 163; *see* SSR 96-7p, 1996 WL 374186, at *2. The ALJ must consider "the medical data previously presented, any other objective indications of the degree of [the symptoms], and subjective accounts of the severity" in determining whether the ALJ believes the claimant. *Luna*, 834 F.2d at 163. That is, the ALJ must assess the credibility of the claimant's assertions of pain or other symptoms. *Id.*

---

[4] SSR 96-7p was superseded on March 29, 2016 (after the Commissioner's decision became final and after the action was already pending in this Court), by SSR 16-3p. The new ruling "eliminat[es] the use of the term 'credibility' [and] clarif[ies] that subjective symptom evaluation is not an examination of a [claimant]'s character." 2016 SSR LEXIS 4, at *1, 2016 WL 1119029, at *1. "Generally, if an agency makes a policy change during the pendency of a claimant's appeal, the reviewing court should remand for the agency to determine whether the new policy affects its prior decision." *Frantz v. Astrue,* 509 F.3d 1299, 1302 (10th Cir. 2007). The new Ruling, however, does not appear to be a policy change but, rather, a clarification. As to the issues raised in this appeal, the Court sees no material difference between the Rulings. The Court's analysis of Plaintiff's argument is the same under either Ruling. Thus, the rescission of SSR 96-7p and issuance of SSR 16-3, alone, does not warrant remand.

The district court cannot re-weigh the evidence. It can only review an ALJ's decision to ensure that he applied the correct legal standard and that his findings were supported by substantial evidence. *Clifton*, 79 F.3d at 1009. "Credibility determinations are peculiarly the province of the finder of fact, and [courts] will not upset such determinations when supported by substantial evidence." *Kepler v. Chater,* 68 F.3d 387, 391 (10th Cir. 1995) (internal quotation marks omitted). Boilerplate language, however, is insufficient. *Id.* Instead, "it is well settled that [ALJs] must give reasons for their decisions." *Reyes v. Bowen*, 845 F.2d 242, 244 (10th Cir. 1988). Although ALJs need not discuss "every piece of evidence," *Clifton v. Chater*, 79 F.3d 1007, 1010 (10th Cir. 1996), their "findings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." *Kepler*, 68 F.3d at 391 (internal quotation marks and brackets omitted).

Here, the ALJ made certain boilerplate findings. He found that Plaintiff's impairments could reasonably be expected to cause the symptoms he reports. Nevertheless, his statements regarding the intensity, persistence, and limiting effects of his symptoms were not entirely credible. Tr. 25. The ALJ then went on to make several specific findings. *See* Tr. 24–27. First, he found that the medical evidence did not substantiate Plaintiff's complaints. Tr. 27. He explained that although Plaintiff's mental health symptoms have waxed and waned, Plaintiff reported that his symptoms were adequately controlled with medication. *Id.* Plaintiff's doctor had noted that Plaintiff was making excellent progress. *Id.* Plaintiff had poor compliance with his medication "at times." *Id.*

7

Second, the ALJ found that Plaintiff had provided inconsistent information. *Id.* He explained that Plaintiff had declined to attend group counseling because he was starting a new job, but when asked about the group counseling at the hearing, Plaintiff said that he could not attend because he was beginning to raise animals. *Id.*; *see* Tr. 53–54. Third, the ALJ noted that Plaintiff had not been hospitalized for mental health treatment and was not attending outpatient counseling. Tr. 27. Finally, the ALJ found that the evidence did not support limitations beyond those assessed in the RFC. *Id.*

Plaintiff argues that the ALJ's credibility analysis was insufficient. [Doc. 16] at 9–12; [Doc. 28] at 3–4. Specifically, Plaintiff argues that he did *not* report that his symptoms were adequately controlled with medications. [Doc. 28] at 3–4 (citing Tr. 58). Also, Plaintiff argues that he, in fact, has been compliant with his medications, other than when he tried unsuccessfully to refill them. *Id.* at 4 (citing Tr. 507, 508, 580). Further, he cites to evidence that could support his subjective complaints. [Doc. 16] at 9–12; [Doc. 28] at 3–4.

The Court finds that the ALJ's credibility determination passes muster. The ALJ explicitly made the required *Luna* findings. Even disregarding the findings that Plaintiff challenges—i.e., that Plaintiff is not always complaint with his medications and that his medications adequately control his symptoms—the ALJ's credibility findings are closely and affirmatively linked to substantial evidence. Plaintiff fails to show reversible error in the ALJ's credibility determination.

### Third Party Statement

Plaintiff also argues that the ALJ failed to consider his wife's statement. [Doc. 16] at 12–14; [Doc. 28] at 4–5. She had reported that Plaintiff "gets offended pretty easily [and] think it's justified. Doesn't like to be disagreed with." [Doc. 16] at 12 (quoting Tr. 235). She reported that Plaintiff "was 'asked' to leave his pastoring & administration job because he would lose his temper with people[.]" *Id.* Mrs. Aguilar stated that her husband does not handle stress well, saying he "yells, cusses [and] takes it out on me and his children." *Id.* Finally, in the remarks section, Mrs. Aguilar added, "In the daytime his temper can go from 0 to 60 in a matter of seconds. One minute he is nice and calm and the next minute he loses it!" *Id.*

"Although there is a distinction between what an adjudicator must *consider* and what the adjudicator must *explain* in the disability determination or decision, the adjudicator generally should explain the weight given to opinions from [third party lay witnesses] or otherwise ensure that the discussion of the evidence . . . allows a . . . subsequent reviewer to follow the adjudicator's reasoning, when such opinions may have an effect on the outcome of the case." SSR 06-03p, 2006 SSR LEXIS 5, at *15–16 (emphases added). Consistent with this Ruling, the Tenth Circuit Court of Appeals has explained that an ALJ is not required to make specific written findings on the credibility of third party witnesses when "the written decision reflects that the ALJ considered the testimony. [I]n addition to discussing the evidence supporting his decision, the ALJ also must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects." *Blea v. Barnhart*, 466 F.3d 903, 915 (10th Cir. 2006) (internal quotation marks and citations omitted).

In this case, the ALJ explicitly stated that he had considered "all the evidence," Tr. 20, and "the entire record," Tr. 22. Although the ALJ did not mention Mrs. Aguilar's statement explicitly, he questioned Plaintiff at the hearing regarding the substance of her statement. Tr. 39–53, 59. The non-attorney representative elicited further testimony from Plaintiff on his difficulty getting along with others and his violent behavior at work and toward his family. Tr. 60–61, 62, 67. More importantly, though, the ALJ referred to the substance of Mrs. Aguilar's report in his decision. For example, the ALJ explicitly noted difficulty controlling anger, trouble interacting with coworkers and supervisors, and stopping work at a school after a physical altercation with a student. Tr. 23, 25. The ALJ mentioned the physical altercations with his wife and children and that Plaintiff was easily agitated. Tr. 25. "Where, as here, the ALJ indicates he has considered all the evidence [the Court's] practice is to take the ALJ at his word." *Wall v. Astrue*, 561 F.3d 1048, 1070 (10th Cir. 2009) (internal quotation marks omitted). The Court finds that there is no reversible error in the ALJ's failure to mention Mrs. Aguilar's statement per se, because the written decision reflects that he considered her testimony.

<u>Function-by-Function Analysis</u>

Plaintiff argues that the ALJ erred in failing to discuss his mental work-related abilities on a function-by-function basis. [Doc. 16] at 14–17; [Doc. 28] at 5–6. He argues that if the ALJ

10

had so analyzed his mental abilities, he would have included restrictions in the RFC that would have precluded other work at step five.[5] *Id.*

Social Security Ruling 96-8p provides that "[t]he RFC assessment is a function-by-function assessment based upon all of the relevant evidence of an individual's ability to do work-related activities." SSR 96-8p, 1996 SSR LEXIS 5, 1996 WL 374184, at *3. The Ruling states further that an ALJ's "[i]nitial failure to consider an individual's ability to perform the specific work-related functions *could* be critical to the outcome of a case." *Id.* (emphasis added). Therefore, the Ruling directs that:

> [N]onexertional capacity must be expressed [in the RFC] in terms of work-related functions. . . . Work-related mental activities generally required for competitive, remunerative work include the abilities to: [1] understand, carry out, and remember instructions; [2] use judgment in making work-related decisions; [3] respond appropriately to supervision, co-workers[,] and work situations; and [4] deal with changes in a routine work setting.

*Id.* at 17.

However, an ALJ's failure to conduct a function-by-function analysis is not always reversible error. The Tenth Circuit Court of Appeals addressed this issue in *Hendron v. Colvin*. 767 F.3d 951, 956–57 (10th Cir. 2014). There, the court found that the absence of an explicit function-by-function analysis was not critical to the outcome of the case because the ALJ clearly had addressed the limitation at issue (Ms. Hendron's ability to sit). *Id.* That is, even without the function-by-function analysis, the court could follow the ALJ's reasoning in evaluating Ms. Hendron's ability to sit. *Id.*

---

[5] Plaintiff also argues that the function-by-function analysis is especially relevant in determining whether an individual can perform unskilled work. [Doc. 16] at 15–17. Plaintiff fails to explain the relevance of the arguments considering that, in this case, the ALJ did not limit Plaintiff to unskilled work. Tr. 24.

Here, essentially, Plaintiff argues that the ALJ erred in failing to perform a function-by-function analysis of his of his work-related mental abilities, i.e., (1) understanding, carrying out, and remembering instructions; (2) using judgment in making work-related decisions; (3) responding appropriately to supervision, co-workers[,] and work situations; and (4) dealing with changes in a routine work setting. Plaintiff argues that the error matters because his RFC should include limitations in these areas that would preclude other work at step five. *See* [Doc. 28] at 5–6. The Court is not persuaded.

Here, as in *Hendron*, the Court is able to follow the ALJ's reasoning in arriving at the mental restrictions in the RFC, even absent an explicit function-by-function analysis. *See* Tr. 23–27. Plaintiff fails to show any reversible error.

## Dr. Reich's Opinion

Plaintiff argues that the ALJ impermissibly picked and chose from among the findings in consultative examiner Dr. Reich's report. [Doc. 16] at 17–18; [Doc. 28] at 6. Among other findings, Dr. Reich noted that his "[n]eurologic exam reveal[ed] a fine tremor on extending hands." Tr. 401. Plaintiff argues that this tremor is a "physiological symptom of PTSD." [Doc. 16] at 18. He goes on to reason, therefore, that the ALJ was required to explain why he did not include in the RFC any limitation in reaching, handling, or fingering. *Id.*

Although ALJs need not discuss every piece of evidence, they are required to discuss the weight assigned to each medical source opinion. *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1161 (10th Cir. 2012) (citing 20 C.F.R. §§ 404.1527(e)(2)(ii), 416.927(e)(2)(ii)). Specifically, when assessing a plaintiff's RFC, an ALJ must explain what weight she assigns to each opinion and

why. SSR 96-5p, 1996 WL 374183, at *5 (July 2, 1996). "[T]here is no requirement in the regulations for a direct correspondence between an RFC finding and a specific medical opinion on [a specific] functional capacity . . . because the ALJ, not a physician, is charged with determining a claimant's RFC from the medical record." *Chapo v. Astrue*, 682 F.3d 1285, 1288 (10th Cir. 2012) (alteration and internal quotation marks omitted)); *see Wells v. Colvin*, 727 F.3d 1061, 1071 (10th Cir. 2013) (same). Nevertheless, "[a]n ALJ is not entitled to pick and choose through an uncontradicted medical opinion, taking only the parts that are favorable to a finding of nondisability." *Chapo*, 682 F.3d at 1292 (internal brackets omitted) (quoting *Haga v. Astrue*, 482 F.3d 1205, 1208 (10th Cir. 2007)). ALJs are required to weigh medical source opinions and to provide "appropriate *explanations* for accepting or rejecting such opinions." SSR 96-5p, 1996 WL 374183, at *5 (emphasis added); *see Keyes-Zachary,* 695 F.3d at 1161 (same) (citing 20 C.F.R. §§ 404.1527(e)(2)(ii), 416.927(e)(2)(ii)). "If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted." SSR 96-8p, 1996 SSR LEXIS 5, at *20, 1996 WL 374184, at *7.

Here, Plaintiff fails to show that the RFC conflicts with Dr. Reich's report. The Court follows Plaintiff's reasoning but finds it quite tenuous. *See* [Doc. 16] at 17–18; [Doc. 28] at 6. Besides the tremor, Plaintiff cites nothing in the record suggesting any trouble with reaching, handling, or fingering. This lack of other evidence matters because the Court is not at all persuaded that limitations in reaching, handling, or fingering follow from a "fine tremor on extending hands." Plaintiff fails to show any error in the ALJ's evaluation of Dr. Reich's opinion.

Duty to Develop the Record

In social security cases, the claimant bears the burden of proving he is disabled. *Maes*, 522 F.3d at 1096. However, administrative social security hearings are non-adversarial, and therefore, ALJs are responsible for developing adequate records on the issues raised. *Id.* This duty is "heightened" when the claimant is not represented by an attorney. *Madrid v. Barnhart*, 447 F.3d 788, 790 (10th Cir. 2006). However, "the claimant has the burden to make sure there is, in the record, evidence sufficient to suggest a reasonable possibility that a severe impairment exists." *Hawkins v. Chater*, 113 F.3d 1162, 1167 (10th Cir. 1997) (internal citations omitted).

In this case, Plaintiff argues that the ALJ failed his duty to develop the record because he did not order a consultative psychiatric or psychological exam. [Doc. 16] at 20–21. He cites to evidence that could support a finding of more restrictive mental limitations than the ALJ ultimately included in the RFC. *Id.* at 20. The Social Security Regulations address some specific situations that require further development of the record by use of a consultative examination. 20 C.F.R. §§ 404.1519a, 416.919a (2012).

> (b) Situations that may require a consultative examination. We may purchase a consultative examination to try to resolve an inconsistency in the evidence, or when the evidence as a whole is insufficient to allow us to make a determination or decision on your claim. Some examples of when we might purchase a consultative examination to secure needed medical evidence, such as clinical findings, laboratory tests, a diagnosis, or prognosis, include but are not limited to:
>
> (1) The additional evidence needed is not contained in the records of your medical sources;
>
> (2) The evidence that may have been available from your treating or other medical sources cannot be obtained for reasons

beyond your control, such as death or noncooperation of a medical source;

(3) Highly technical or specialized medical evidence that we need is not available from your treating or other medical sources; or

(4) There is an indication of a change in your condition that is likely to affect your ability to work, but the current severity of your impairment is not established.

*Id.*

Plaintiff's position is that once the ALJ disagreed with non-examining physicians and, instead, found that his PTSD, major depression, and anxiety were, indeed, severe, the ALJ should have ordered a consultative exam. [Doc. 28] at 7. Plaintiff argues that because "no functional opinions described Mr. Aguilar's anxiety symptoms[, the] ALJ [was free] to fabricate his own functional assessment[.]" *Id.* The Court is not persuaded that the ALJ erred in failing to order a consultative psychological exam.

Plaintiff does not allege that he has a mental *impairment* that the ALJ failed to recognize for lack of medical evidence. Instead, Plaintiff disagrees with the functional *limitations* assessed by the ALJ resulting from his PTSD, major depression, and anxiety. *Id.* This distinction matters here, particularly, because the ALJ—not a physician or psychologist—is charged with determining the RFC (i.e., his functional limitations) from the medical record. *See, e.g.,* SSR 96-5p, 1996 SSR LEXIS 2, at *10, 1996 WL 374183, at *5 (describing the distinction between a medical or psychological opinion as to a claimant's functional limitations and the RFC assessment, which is reserved to the ALJ). The ALJ here had years' worth of mental health records from the Veterans Affairs providers. Tr. 286–399, 403–637. He also had the opinions of

two non-examining psychologists, Dr. Peterson and Dr. Anderton. Tr. 78–79, 96–97. Further, he had the benefit of written statements from Plaintiff and his wife as well as live testimony from Plaintiff at the hearing. Tr. 37–67, 213–44. Plaintiff fails to show that any of the circumstances described in the regulations as requiring a consultative examination are present here. Ultimately, Plaintiff fails to show reversible error in the lack of a consultative psychological examination.

**IT IS THEREFORE ORDERED, ADJUDGED, AND DECREED** that Plaintiff's Motion to Reverse and Remand for a Rehearing with Supporting Memorandum [Doc. 16] is **DENIED**. The Commissioner's final decision is affirmed.

**IT IS SO ORDERED.**

_____
**STEPHAN M. VIDMAR**
**United States Magistrate Judge**
**Presiding by Consent**